# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRENDA JUNE POGUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-252-JHP-SPS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Brenda June Pogue requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born June 4, 1959, and was fifty-four years old at the time of the administrative hearing (Tr. 41). She completed the twelfth grade while attending special education classes, and has no past relevant work (Tr. 24, 224-225). The claimant alleges that she has been unable to work since January 2, 2005, due to her legs, feet, back, hips, asthma, and anxiety attacks (Tr. 224).

**Procedural History**

On October 18, 2011 the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, for disabled widow's benefits under Title II, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 23, 2013 (Tr. 11-25). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a range of light work

as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she can lift/carry/push/pull twenty pounds occasionally and ten pounds frequently and stand/walk/sit six hours in an eight-hour workday, but she required a sit/stand option to allow for a change in position at least every thirty minutes. Additionally, he determined that she could occasionally climb ramps/stairs, kneel, and crouch, but that she should never climb ladders/scaffolds or perform any crawling, and she should avoid work around unprotected heights, moving mechanical parts, concentrated exposures to humidity, wetness, dust, fumes, and gases, and in environments with temperature extremes. Finally, he concluded that she was limited to simple tasks and simple work-related decisions with time off tasks accommodated by normal breaks (Tr. 17). The ALJ then concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *i. e.*, cashier II and small products assembly II (Tr. 24).

**Review**

The claimant's sole contention of error is that ALJ failed to properly conduct an evaluation of the treating physician opinion contained in the record. The undersigned Magistrate Judge agrees, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of asthma, COPD, hypertension, lumbar disc disease, degenerative joint disease of the right hip, atrophic right kidney, recurrent urinary tract infections, obesity, coronary artery disease, sleep disorder, anxiety disorder, and depression, as well as the nonsevere impairments of GERD, Hepatitis C, dyslexia, and history of alcohol abuse (Tr. 14-15). Relevant medical

records reflect that the claimant was almost exclusively treated through the Chickasaw Nation Health System, where Dr. Jerald Gilbert was her treating physician, among other providers. As early as May 2008, the claimant reported incontinence problems (Tr. 413). On July 21, 2010, Dr. Gilbert noted that the claimant presented for evaluation of her impairments, that she had recently fallen and been seen in the ER, that she has had problems with her right knee buckling under her for the past year but it seemed to be getting more frequent, and that her obesity was making her symptoms worse (Tr. 384).

On October 14, 2011, Dr. Gilbert drafted a letter stating that he had been treating the claimant for approximately fifteen years, and her multiple health problems included asthma/COPD, DDD lumbar spine and sciatica radiating down right leg, DJD right hip, recurrent UTI's, hypertension, morbid obesity, and Hepatitis C. He stated that, due to these problems, she is "totally and permanently disabled" and "unable to work" (Tr. 792). He did not complete any form of RFC assessment, nor was the claimant evaluated by a consultative examiner for her RFC. Notes from his examination that day indicated that the claimant continued to struggle with her weight, continued to struggle with her breathing despite her medications, continued to have severe low back pain radiating down the right leg, continued to have right hip pain, had hydroureter left, right renal atrophy, and poor control of her hypertension (Tr. 351). He noted that she was unable to work due to all of those above problems (Tr. 351). His specific exam notes find that she had a positive straight leg raise test on the right leg, at 40 degrees (Tr. 351).

On December 28, 2011, Dr. Luther Woodcock reviewed the claimant's available records and concluded that she could perform light work but was limited to only

occasionally performing postural limitations and had no environmental limitations (including none found for her asthma/COPD) (Tr. 342-347).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as much of the evidence contained in the medical record (Tr. 17-22). He noted that Dr. Gilbert treated the claimant for around fifteen years, and received regular treatment for her various impairments (Tr. 18). He found the claimant not credible, noting that her hypertension was poorly controlled secondary to noncompliance. Further, he noted she had episodic flare-ups of her asthma, that it was described by Dr. Gilbert as "stable" in June 2011, and that it had improved with the medication Spiriva (Tr. 20). He then determined that the evidence in the record did not support Dr. Gilbert's opinion because: (i) his own treatment notes did not support such a finding; (ii) he "saw the claimant basically every three months, primarily for the refilling of medications"; (iii) he provided no clinical signs for his conclusion; (iv) if she had the pain and functional limitations as noted by Dr. Gilbert, he "would have referred her to a specialist for further treatment"; (v) her medication usage suggests she received adequate relief of her pain; and (vi) her uncontrolled hypertension was the result of noncompliance (Tr. 23). He then declined to give this opinion controlling weight and ultimately determined that the claimant was not disabled.

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d

1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-

386 (7th Cir. 1984). This is of particular concern where, as here, there is a good indication that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments but focused on times when exams had more positive results. 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). Moreover, it is evident that the ALJ failed to properly evaluate all of the claimant's impairments in combination, because he made no accounting for her UTIs and reported incontinence, much less in combination with her other impairments. This failure to consider all her impairments—singly and in combination—was error at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'").

Additionally, although an ALJ is not required to give controlling weight to an opinion that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations. Instead, the ALJ ignored the evidence in the record regarding the claimant's worsening COPD and degenerative lumbar disc disease and joint disease of the right hip.

*See Langley,* 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). This error is also problematic because it indicates that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments under 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). The ALJ thus improperly evaluated the treating physician opinion that the claimant could not work. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Moreover, because the ALJ essentially rejected Dr. Gilbert's opinion and found that the state reviewing physician opinion did not adequately account for the claimant's limitations, the ALJ has connected no evidence in the record to instruct this Court as to how the claimant's limitations are accounted for in the RFC. The undersigned Magistrate Judge acknowledges that the record in this case is sparse with regard to functional examining evaluations of the claimant's mental impairments, as well as the ALJ's broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence

suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Nevertheless, the undersigned Magistrate Judge encourages the ALJ to consider recontacting the claimant's treating physician, Dr. Gilbert, requesting further medical records, and/or ordering a consultative examination to properly account for the claimant's impairments. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record, but an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record, and the undersigned Magistrate Judge leaves that to the ALJ on remand. *See Hawkins*, 113 F.3d at 11666, 1168. The ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he failed to further develop the record.

Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to

the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**